DEIST, APPELLANT, *v.* TIMMINS, APPELLEE, ET AL.

(No. 86AP-306—Decided December 4, 1986.)

*Jones & Sheridan Co., L.P.A.,* and *John S. Jones,* for appellant Frederick L. Deist.

*Timothy J. Boone,* for appellee Richard V. Timmins.

REILLY, J. This is an appeal from the Franklin County Court of Common Pleas. Plaintiff sought a judicial dissolution pursuant to R.C. 1775.31 of the Deist & Timmins partnership, an accounting of the partnership, and reimbursement totalling $51,600 from defendant Richard V. Timmins for partnership debts and expenses allegedly paid by plaintiff.

The parties had an oral agreement to form the Deist & Timmins partnership. The partnership also did business as Timmins and Associates. There was no written partnership agreement executed, although one was drafted. Profits and losses of the partnership were to be shared equally.

The oral agreement did not prohibit them from devoting their personal time to other business endeavors outside the partnership. Both conducted real estate projects for themselves and each was aware that neither devoted full time to the partnership business.

Each partner apparently brought to the partnership expertise and knowledge regarding certain aspects of the partnership business. Plaintiff's duties were to purchase underpriced old properties, renovate them, and subsequently rent or sell them. Defendant's functions involved the construction of new real estate properties. He was also responsible for the generation of cash flow necessary for the acquisition of old properties.

The partnership ceased doing business in 1982. Plaintiff, on October 25, 1982, filed the present action in the Franklin County Court of Common

Pleas. The trial court dissolved the partnership pursuant to R.C. 1775.31(A)(3), (4) and (6). The court granted judgment in favor of defendant denying plaintiff's claim for reimbursement of partnership debts and expenses which plaintiff alleges were paid out of his personal funds. Further, defendant was awarded $48,000, plus interest and court costs on his counterclaim for damages to his business reputation and credit rating, which resulted in a loss of business and profits.

Plaintiff advances the following assignments of error:

"I.  The trial court erred as a matter of law, in granting judgment to appellee on his counterclaim, by failing to first apply R.C. Sections 1775.14, 1775.17, and 1775.39 to settle the partnership accounts between the partners.

"II.  The trial court erred as a matter of law, in finding paragraph 4 of appellee's counterclaim to state a cause of action in tort, where such allegation claims damage as a result of breach of contract.

"III.  The trial court erred as a matter of law, in finding appellant's actions constituted tortious conduct damaging appellee's reputation, where appellee failed to present evidence of defamation.

"IV.  The trial court erred as a matter of law, in awarding damages to appellee on his counterclaim, where appellee presented no probative evidence and the court made no findings of fact concerning amount of damages.

"V.  The trial court erred in making findings of fact which are not supported by the evidence."

Plaintiff's second and fourth assignments of error are interrelated and are considered together. Plaintiff contends that because the pleadings in defendant's counterclaim only alleged a cause of action based on contract, and the parties were trying a case for a breach of contract, the trial court erred in awarding damages based on a cause of action in tort. Plaintiff further asserts that defendant failed to amend his counterclaim in conformity with Civ. R. 15, which states that:

"(B)  Amendments to conform to the evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

The record shows that plaintiff gave implied consent to litigate the issues concerning whether plaintiff's business practices constituted tortious conduct which resulted in a loss of income to defendant. As the referee indicated, plaintiff was aware that those issues not pleaded were before the court. Therefore, such matters concerning plaintiff's alleged tortious conduct committed in the course of the partnership business were litigated by the implied consent of plaintiff.

Moreover, defendant moved the court to "Amend in Accordance with the Evidence," pursuant to Civ. R. 15(B), which was sustained by the

referee. Further, plaintiff has not demonstrated that he was in any way prejudiced in defending against defendant's counterclaim at trial.

As to plaintiff's fourth assignment of error, the issue is whether the trial court erred in awarding defendant $48,000 on the counterclaim based on a cause of action in tort. The fourth paragraph of defendant's counterclaim states that:

"As a result of Plaintiff's breach of the partnership agreement, the credit and good business name of Defendant, Richard V. Timmins, in the community has been irreparably harmed."

The trial court approved the referee's report wherein the fifth paragraph of the report sets forth the rationale for awarding $48,000 in damages on defendant's counterclaim and states:

"Paragraph 4 of defendant's Counterclaim states a cause of action under Ohio law against plaintiff for tortious conduct which resulted in the ruin of defendant's professional reputation and credit rating, which in turn caused him damages in the form of loss of business and loss of profits. This Referee concludes that defendant has established by a preponderance of the evidence that plaintiff wrongfully used defendant's business name to obtain materials and services on credit, actively conspired to keep the knowledge of this from defendant, and failed and refused to pay or timely pay for said materials and services; that defendant subsequently was denied credit by certain suppliers, had some credit limits drastically reduced, and could not get certain subcontractors to work for him any longer; and that plaintiff's wrongful conduct was the direct and proximate cause of the ruin of defendant's credit rating and business reputation. This Referee further concludes that plaintiff acted willfully and intentionally in violation of his agreement with defendant, and with full knowledge that the probable result of his actions would be the destruction of defendant's construction business.

"This Referee further concludes that defendant suffered actual damages in the form of lost business as a result of the damage to his credit rating and business reputation, that such damages reasonably and foreseeably flowed from plaintiff's wrongful conduct, and that such damages were established by defendant with reasonable certainty by a preponderance of the evidence. Accordingly, judgment should be granted to defendant on his Counterclaim against Plaintiff in the amount of $48,000.00."

Defendant contends that the trial court's award of $48,000 was properly based upon a breach of an implied fiduciary duty owed between partners. It is well-settled that the relationship between partners is to be one of mutual trust and confidence with each partner owing to the other the duty of loyalty and good faith. However, Ohio has not recognized a recovery of damages for breach of an implied fiduciary duty owed between partners.

Defendant urges this court to allow a cause of action for breach of an implied fiduciary duty for the same reasons that an action in tort has been previously recognized where an insurer has breached its duty of good faith owed to the insured. See *Slater* v. *Motorists Mut. Ins. Co.* (1962), 174 Ohio St. 148, 21 O.O. 2d 420, 187 N.E. 2d 45. Defendant claims that recovery by an insured for a breach of an insurer's duty of good faith is sufficiently analogous so as to also allow recovery for one partner's breach of an implied fiduciary duty owed to another partner. The circumstances in this case are distinguishable because the relationship between an insurer and the insured is different from the relationship between two business partners.

As the Sixth Circuit Court stated in *Battista* v. *Lebanon Trotting Assn.* (C.A. 6, 1976), 538 F.2d 111, 117, quoting *Fletcher* v. *Western Natl. Life Ins. Co.* (1970), 10 Cal. App. 3d 376, 401, 89 Cal. Rptr. 78, 93, 47 A.L.R. 3d 286, 305:

" 'An insurer owes to its insured an implied-in-law duty of good faith and fair dealing that it will do nothing to deprive the insured of the benefits of the policy.' "

The relationships between partners and insurer-insured both require good faith and fair dealing, but insurance implies a higher duty by the insurer.

Partners enter into a partnership voluntarily and on relatively equal footing. As R.C. 1775.08 states:

"(A) Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, * * * for apparently carrying on in the usual way the business of the partnership * * * binds the partnership * * *."

Each partner is also liable for the wrongful acts or omissions of the other partner carried out in the ordinary course of the partnership business. See R.C. 1775.12. Thus, the relationship between one partner to another is considerably different from the relationship between an insurer and the insured and, consequently, so are the available remedies.

Defendant also maintains that the award of $48,000 is proper because defendant may recover damages for lost business and profits based on a breach of contract theory. The trial court, however, did not base its award on breach of contract. The award was for "tortious conduct which resulted in the ruin of defendant's professional reputation and credit rating; which in turn caused him damages in the form of loss of business and loss of profits." (Referee's Report, page 11.) For these reasons, defendant's contention that the award was properly based on a breach of contract is not persuasive. Since Ohio does not recognize recovery of damages for a breach of an implied fiduciary duty, the trial court abused its discretion in awarding defendant $48,000 on his counterclaim and judgment should have been directed for plaintiff on defendant's counterclaim.

Therefore, considering that the damage award resulted from a breach of implied fiduciary duty which will not support a claim for the recovery of damages, it is not necessary to decide whether the award was supported by the evidence as raised in plaintiff's fourth assignment of error.

Since defendant may not recover on his counterclaim for breach of an implied fiduciary duty, the issue in plaintiff's first assignment of error is whether the trial court failed to settle the partners' accounts pursuant to R.C. 1775.39. Plaintiff argues that the trial court awarded defendant damages on his counterclaim without first adjusting and settling the partners' accounts in accordance with R.C. 1775.39. Specifically, plaintiff claims that he paid from his personal account $51,600 of D&T partnership debts and was never reimbursed for one-half of those partnership debts paid by him from his personal account. Furthermore, plaintiff maintains that he should be repaid for his capital contribution which, according to plaintiff, was $18,000 greater than defendant's capital contribution. Accordingly, plaintiff asserts that defendant is indebted to him in the amount of $43,800.

Defendant does not dispute plaintiff's contention that plaintiff paid $51,600 for D&T partnership debts out of his personal funds, nor does he question the status of the parties' partnership capital accounts. Defendant contends that an accounting and settling of the partners' accounts need not be performed because plaintiff's acts of alleged misconduct during the course

of the partnership justified the trial court's failure to settle the accounts of the partners.

In essence, defendant contends that since plaintiff came into court with "unclean hands," the trial court acted in accordance with its equity powers and therefore could disallow a recovery of past obligations paid from plaintiff's personal fund or recovery for an unequal capital contribution.

Nevertheless, defendant maintains that even if a settling of the partners' accounts would show that plaintiff is indebted to defendant, it was within the trial court's discretion not to settle the accounts of the partners. Partners are jointly liable for all debts and obligations of the partnership, pursuant to R.C. 1775.14(B). Further, without an agreement to the contrary, partners shall share in the partnership losses in the same proportion as they share in the profits. See R.C. 1775.17(A). In this case, the parties agreed to share equally in the losses and profits of the partnership. Since there was no other agreement, both plaintiff and defendant are jointly liable for all of the debts and obligations of the partnership.

Defendant's position that it was within the trial court's discretion not to settle the accounts of the partners is also contrary to R.C. 1775.35(A), which expressly states: "The dissolution of the partnership does not of itself discharge the existing liability of any partner." The rules provided for settling accounts between partners after dissolution are provided in R.C. 1775.39. The provisions of R.C. 1775.39 are subject, however, to any contrary agreement which the partners may make. See *Felix* v. *Clarke* (June 26, 1985), Summit App. No. 11915, unreported. As the court of appeals stated in *Felix*:

"* * * Had the partners desired to limit the application of· R.C. 1775.39,

they could have done so by including such a provision in the partnership agreement." *Id.* at 4.

The parties did not provide in their oral agreement any method by which the accounts would be settled in the event of an involuntary judicial dissolution. Neither did the unexecuted partnership agreement provide any method by which the accounts of the partners were to be settled.

Consequently, the parties are bound by the criteria set forth in R.C. 1775.39(A) to settle the accounts of the partners. Thus, even though the trial court found that plaintiff's conduct was responsible for the dissolution of the partnership, the partners' accounts still must be settled. There was no agreement in the record to the contrary. Therefore, although the court judicially dissolved the partnership, the dissolution did not terminate obligations that the partners may still owe to one another resulting out of past transactions conducted within the course of the ordinary partnership business.

Prior to the Uniform Partnership Act, a party was required to seek an accounting before an action could be maintained for reimbursement. See *Kunneke* v. *Mapel* (1899), 60 Ohio St. 1, 53 N.E. 259. Since the adoption of the Uniform Partnership Act in Ohio, the rules for settling accounts between partners after the dissolution are set forth in R.C. 1775.39, which states in part:

"In settling accounts between the partners after dissolution, the following rules shall be observed, subject to any agreement to the contrary:

"(A) The assets of the partnership are:

"(1) The partnership property;

"(2) The contributions of the partners necessary for the payment of all the liabilities specified in division (B) of this section.

"(B) The liabilities of the partnership shall rank in order of payment, as follows:

"(1) Those owing to creditors other than partners;

"(2) Those owing to partners other than for capital and profits;

"(3) Those owing to partners in respect of capital;

"(4) Those owing to partners in respect of profits.

"(C) The assets shall be applied in the order of their declaration in division (A) of this section to the satisfaction of the liabilities."

The burden of proof is on the partner seeking the accounting to furnish the trial court with sufficient evidence to enable the court to state the accounts. See *Oglesby* v. *Thompson* (1898), 59 Ohio St. 60, 51 N.E. 878. There was sufficient evidence before the trial court, including plaintiff's exhibit R, stipulations and other evidence, for the court to find that the partners' accounts should be settled in accordance with R.C. 1775.39.

Defendant also contends in the alternative that the trial court accounted for plaintiff's contributions, but that any amount which defendant may have owed to plaintiff was set off against the award on defendant's counterclaim.

The record does not support such a finding. Furthermore, it cannot be reasonably maintained that solely because defendant was awarded less than the damages he sought in his counterclaim an accounting was necessarily performed. The trial court's judgment entry indicates that an accounting to settle the partnership accounts of plaintiff and defendant was neither performed nor ordered.

The trial court erred when it did not order a settling of the partners' accounts. The fact that the trial court found that plaintiff was responsible for the dissolution of the partnership did not determine the issues as to the settlement of the partners' accounts where there is sufficient evidence to do so.

Plaintiff contends in the third assignment of error that the award of damages on defendant's counterclaim was in error because defendant did not present evidence to support a claim in defamation. A defamation action was, however, neither pleaded nor tried before the court. Moreover, as indicated above, defendant's award of damages was incorrectly based upon a breach of an implied fiduciary duty. Therefore, plaintiff's third assignment of error is not well-taken.

In plaintiff's fifth assignment of error, he contends that the trial court's findings of fact were not supported by the evidence. This court cannot substitute its own judgment where there is reasonable evidence existing in the record to support the trial court's determination. *Paulin* v. *Midland Mut. Life Ins. Co.* (1974), 37 Ohio St. 2d 109, 66 O.O. 2d 231, 307 N.E. 2d 908. The trial court's findings of fact were sufficiently and reasonably supported by the evidence. Hence, there was no abuse of discretion by the trial court in its findings of fact. Accordingly, plaintiff's fifth assignment is not well-taken.

For the foregoing reasons, plaintiff's first and fourth assignments of error are sustained, while the second, third and fifth assignments of error are overruled. The case is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and case remanded.*

TYACK and MARTIN, JJ., concur.

MARTIN, J., of the Fairfield County Court of Common Pleas, sitting by assignment in the Tenth Appellate District.